1    JOSEPH P. RUSSONIELLO (CSBN 44332)
     United States Attorney
2    JOANN M. SWANSON (CSBN 88143)
     Chief, Civil Division
3    CLAIRE T. CORMIER (CSBN 154364)
     Assistant United States Attorney
4        150 Almaden Blvd., Suite 900
         San Jose, California 95113
5        Telephone: (408) 535-5082
         FAX: (408) 535-5081
6        claire.cormier@usdoj.gov

7    Attorneys for United States of America

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   KATHLEEN VENTIMIGLIA,                )    No. 07-05481 RS
     individually, and as the Guardian Ad Litem )
13   for STEPHEN VENTIMILIA and KELLIE    )
     VENTIMILIA,                          )    DECLARATION OF JOHN A. SHEA
14                                        )    IN SUPPORT OF DEFENDANT
                                          )    UNITED STATES OF AMERICA'S
15            Plaintiffs,                  )    MOTION TO DISMISS
                                          )
16        v.                               )
                                          )
17   UNITED STATES OF AMERICA,            )
     CHAMBLIN-LANDES                      )
18   CONSTRUCTION, INC., a California      )
     corporation, and DOES 1-50, inclusive, )
19                                        )
              Defendants                   )
20   _____ )

21        I, John A. Shea, declare as follows:

22        1. Except as otherwise stated, the matters stated in this declaration are true of my own

23   knowledge and, if necessary, I could and would competently testify to them.

24        2. I am the Supervisor, Liaison Section, Records Management Branch, for the Naval

25   Criminal Investigative Service ("NCIS"). In that capacity, I act as a custodian of records for

26   NCIS.

27        3. NCIS investigation records are generated at or near the time of the relevant NCIS

28   investigation and are based on information from persons that the NCIS investigators believe

     SHEA DECLARATION RE MOTION TO DISMISS
     Case No. 07-05481 RS

1  may have knowledge of the events. Such records are retained by NCIS in the regular course of

2  NCIS's operations. It is NCIS's policy and practice to accurately record information received

3  during NCIS investigations.

4      4. NCIS is authorized to investigate suspected criminal activities at Navy facilities. I

5  am informed and believe that an NCIS investigation was conducted relating to the death of

6  Joseph Ventimiglia at the Monterey Pines Golf Course in 2005. I am informed and believe that

7  NCIS worked with local law enforcement, including the Monterey County Sheriff's

8  Department, in investigating Mr. Ventimiglia's death.

9      5. Attached hereto as Exhibit A are true and correct copies of excerpts from the NCIS

10  investigation into the death of Joseph Ventimiglia, including the Report of Investigation, and

11  records of interviews and other contacts by the NCIS investigator.

12     6. Attached hereto as Exhibit B are true and correct copies of documents obtained by

13  NCIS, which I am informed and believe were generated by or for local law enforcement

14  agencies investigating Joseph Ventimiglia as a missing person or the death of Joseph

15  Ventimiglia. While these documents were not generated by NCIS, NCIS obtained copies of

16  these documents as part of its investigation into Mr. Ventimiglia's death.

17     I declare under penalty of perjury that the foregoing is true and correct.

18

19     Executed on July ___, 2008, at _____.

20

21
                                    _____
22                                  John A. Shea

23

24

25

26

27

28

SHEA DECLARATION RE MOTION TO DISMISS
Case No. 07-05481 RS                    1

1  may have knowledge of the events. Such records are retained by NCIS in the regular course of

2  NCIS's operations. It is NCIS's policy and practice to accurately record information received

3  during NCIS investigations.

4      4. NCIS is authorized to investigate suspected criminal activities at Navy facilities. I

5  am informed and believe that an NCIS investigation was conducted relating to the death of

6  Joseph Ventimiglia at the Monterey Pines Golf Course in 2005. I am informed and believe that

7  NCIS worked with local law enforcement, including the Monterey County Sheriff's

8  Department, in investigating Mr. Ventimiglia's death.

9      5. Attached hereto as Exhibit A are true and correct copies of excerpts from the NCIS

10  investigation into the death of Joseph Ventimiglia, including the Report of Investigation, and

11  records of interviews and other contacts by the NCIS investigator.

12      6. Attached hereto as Exhibit B are true and correct copies of documents obtained by

13  NCIS, which I am informed and believe were generated by or for local law enforcement

14  agencies investigating Joseph Ventimiglia as a missing person or the death of Joseph

15  Ventimiglia. While these documents were not generated by NCIS, NCIS obtained copies of

16  these documents as part of its investigation into Mr. Ventimiglia's death.

17      I declare under penalty of perjury that the foregoing is true and correct.

18

19      Executed on July 17, 2008, at 716 Sicard St. SE, Washington DC 20388

20

21                              John A. Shea

22

23

24

25

26

27

28

SHEA DECLARATION RE MOTION TO DISMISS
Case No. 07-05481 RS                    1

Exhibit A

252188 12:32 20060113 IN:SSDEMAIL #2206 OUT:23EXLIFE #19580

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

REPORT OF INVESTIGATION (CLOSED)                    13JAN06

DEATH (II)                    CONTROL:  30NOV05-SWMY-0038-7HNA/C

V/VENTIMIGLIA, JOSEPH/CIV
  M/W/USXX/N/████████/02OCT53/MONTEREY CA

COMMAND/NAVAL POSTGRADUATE SCHOOL/62271

MADE AT/SWMY/MONTEREY CA/BRIAN A. VAN CLEEF, SPECIAL AGENT

REFERENCE(S)
(A) ROI (INTERIM)/05JAN06=85(Contains exhibits 1-12)

EXHIBIT(S)
(13) IA: Contact with Det. A. MARTINEZ/Receipt of MCSO Coroner's
    Report and Autopsy Photographs/Various=85(Copy SWPH/0023)

EXECUTIVE SUMMARY
1.  On 30NOV05, V/VENTIMIGLIA's body was located submerged in the
hole 3 pond aboard the Monterey Pines Golf Course (MPGC), Monterey,
CA.  MPGC is Navy property open to the public and under concurrent
jurisdiction.  Investigation was initiated to assist the Monterey
County Sheriff's Department (MCSO), Office of the Coroner, in their
death investigation.  V/VENTIMIGLIA was last seen on 29NOV05 at
approximately 1300 as he checked in at the MPGC proshop to begin
golfing.  Later that day, MPGC staff members retrieved an unattended
golf bag (which was later identified as belonging to V/VENTIMIGLIA)
near the banks of the 3rd hole pond but did not think to take any
further action.  Death scene examination of the pond revealed
V/VENTIMIGLIA might have been attempting to retrieve a golf ball out
of the pond and fell in.  Examination further revealed the wet
weather of 29NOV05 made the banks of the pond extremely slippery.
Witness interviews revealed V/VENTIMIGLIA usually golfed alone and
retrieved balls out of the ponds.  Reference (A) pertains.  Final
autopsy results ruled the cause of death to be asphyxia due to
drowning and manner of death to be accidental.  MCSO investigation
further revealed V/VENTIMIGLIA was a very poor swimmer.

NARRATIVE
1.  On 08JAN06, Reporting Agent obtained the final MCSO Coroner's
Report and Postmortem examination report from Detective Al MARTINEZ,
MCSO, Office of the Coroner.  Report ruled the cause of death to be
asphyxia due to drowning and manner of death to be accidental.
Toxicology results were negative.  MARTINEZ also advised RA that
V/VENTIMIGLIA's family said V/VENTIMIGLIA was an extremely poor
swimmer.  Exhibit (13) pertains.  No further action is requested by
the MCSO.

ACTION
DIST: Active investigation complete.

DISTRIBUTION

**FOR OFFICIAL USE ONLY**

*Page 1*

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS
HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC
AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

USN00061

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    V/VENTIMIGLIA, JOSEPH/CIV
CCN:    30NOV05-SWMY-0038-7HNA

INVESTIGATIVE ACTION:   CONTACT WITH DET. AL MARTINEZ/RECEIPT OF MCSO CORONER'S
REPORT AND AUTOPSY PHOTOGRAPHS

1. On 06JAN06, Reporting Agent (RA) met with Detective Al MARTINEZ, Monterey County Sheriff's Office (MCSO), Office of the Coroner, Monterey, CA to receive a copy of the final MCSO Report and Postmortem Examination Report on the death of V/VENTIMIGLIA. John R. Hain, M.D. Forensic Pathologist, conducted Postmortem Examination.

2. Postmortem examination did not find evidence of injury or trauma. No evidence of intoxication or significant natural disease was present. HAIN ruled the cause of death to be Asphyxia due to drowning and manner of death to be accidental. Toxicology results were negative. Enclosures (A) and (B) pertain.

3. MARTINEZ stated during the course of his investigation he had contacted Kathleen VENTIMIGLIA (wife of V/VENTIMIGLIA) and Michael VENTIMIGLIA (brother of V/VENTIMIGLIA). Both of them advised that V/VENTIMIGLIA learned to swim as an adult and was a very poor swimmer.

4. MARTINEZ also provided additional photographs concerning the recovery and autopsy of V/VENTIMIGLIA. Enclosures (C) through (I) pertain.

ENCLOSURE(S)
(A) MCSO Coroners Report #20050948
(B) Monterey County Postmortem Examination Report
(C) Photograph of V/VENTIMIGLIA following recovery from pond
(D) Photograph of V/VENTIMIGLIA within the body bag
(E) Photograph of V/VENTIMIGLIA's mid-section within the body bag
(F) Photograph of V/VENTIMIGLIA upper half
(G) Photograph of V/VENTIMIGLIA lower half
(H) Photograph of V/VENTIMIGLIA's lower legs and feet
(I) Photograph of V/VENTIMIGLIA's torso

Reported By:    Brian A. Van Cleef
Office:    NCISRU Monterey

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

USN00063

Exhibit ( B )

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

**TITLE:**  V/VENTIMIGLIA, JOSEPH/CIV
**CCN:**  30NOV05-SWMY-0038-7HNA

**INVESTIGATIVE ACTION:  RESULTS OF INTERVIEW OF RIKKI PANIS, ASSISTANT MANAGER, MPGC**

1. On 08DEC05, Reporting Agent interviewed Rikki PANIS, Assistant Manager of the Monterey Pines Golf Course (MPGC) regarding the alleged drowning death of V/VENTIMIGLIA. V/VENTIMIGLIA's body was located in the pond adjacent to hole 3 on 30NOV05.

2. PANIS said that on 29NOV05, she recalled V/VENTIMIGLIA checking in at the MPGC pro shop prior to golfing at around 1300. PANIS's shift ended at 1315 and she subsequently left MPGC. PANIS stated that V/VENTIMIGLIA was a MPGC "pass holder" so the MPGC Point of Sale System (POS) would not list the exact time he checked in at the pro shop. The POS did reveal the following check-ins:

      1116 – 1 civilian
      1240 – 1 active duty
      1252 – 1 DoD member
      1354 – 2 active duty
      1544 – 1 active duty

The POS system does not list identifying information. PANIS stated that golfers do not need to check out at the pro shop if they are golfing Monday through Friday.

3. PANIS knew V/VENTIMIGLIA as a regular golfer at MPGC. PANIS said V/VENTIMIGLIA would usually play golf by himself and hit multiple balls per hole.

4. PANIS said V/VENTIMIGLIA's unattended bag was reported by an unknown golfer and taken to the pro shop by MPGC employee Craig VENTULATH on 29NOV05. PANIS said it is not unusual to find unattended golf bags in the MPGC parking lot and driving range.

5. PANIS stated her uncle Ramon PANIS (NFI) told her that he witnessed a golfer slip into the pond near hole three several weeks prior to 29NOV05. R. PANIS and another golfer pulled the stranded golfer out of the pond.

BIOGRAPHICAL DATA
EMPLOYMENT:  MPGC Assistant Manager
SSN:
DOB:
POB:  Salinas, CA
RESIDENCE:
OTHER:  c: w: 656-1087

**Reported By:**  Brian A. Van Cleef
**Office:**  NCISRU Monterey

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(IES) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

Exhibit ( 4 )

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:  V/VENTIMIGLIA, JOSEPH/CIV
CCN:   30NOV05-SWMY-0038-7HNA

**INVESTIGATIVE ACTION:   RESULTS OF INTERVIEW OF LT. SEAN RAMSEY, NPSPD**

1. On 12DEC05, Reporting Agent (RA) interviewed Lt. Sean RAMSEY, Naval Postgraduate School Police Department (NPSPD).  On 30NOV05 RAMSEY responded to the Monterey Pines Golf Course (MPGC), Monterey, CA regarding the discovery of V/VENTIMIGLIA's vehicle in the MPGC parking lot. V/VENTIMIGLIA was reported missing by family members the previous day (29NOV05).

2. RAMSEY stated that on 30NOV05 at around 0730, he received a telephone call at NPSPD from David STOCKLY, MPGC General Manager.  STOCKLY reported that a missing person's vehicle was located in the MPGC parking lot.  RAMSEY, along with MA1 E.K. BROOKS, USN; MA1 Greg SCHLUMPF, USN; Officer Ronnie BONNER, NPSPD; Cpl Larry SMITH, NPSPD and Officer Jeff PRAY, NPSPD responded to MPGC.  Prior to entering MPGC, RAMSEY made contact with an unknown Officer from the Monterey Police Department (MPD), Monterey, CA, who was parked outside the MPGC gate.  The MPD Officer stated that Seaside, CA Police Department (SPD) had a missing persons report regarding the owner of the vehicle.

3. RAMSEY drove into MPGC and made contact with STOCKLY, Daniel TRACEY, Superintendent, MPGC, and Capt. Mike VENTIMIGLIA, Monterey Fire Department (V/VENTIMIGLIA's brother), in the parking lot behind the MPGC pro shop.  STOCKLY pointed out a Toyota "RAV 4" in the parking lot as the vehicle of the missing person.  STOCKLY also identified the missing person as Joseph VENTIMIGLIA. RAMSEY contacted Navy Region Southwest Dispatch for vehicle plate identification, which came back to V/VENTIMIGLIA.  M. VENTIMIGLIA also told RAMSEY he had tried to search for V/VENTIMIGLIA the previous night but the MPGC entrance gate was closed.  At this point, an unknown MPGC employee approached RAMSEY and reported finding an unattended golf bag the previous day.  The unknown employee then led RAMSEY, PRAY, STOCKLY and M. VENTIMIGLIA to an area near the southwest corner of the pond adjacent to hole 3.  The unknown employee told RAMSEY the golf bag was positioned between the pine tree and the bank of the pond.  RAMSEY and PRAY conducted a search of the area with negative results.  RAMSEY stated he saw what appeared to be drag marks on the black plastic, which lined the bank of the pond.

4. RAMSEY ordered the area secured and asked the MPGC staff to conduct another search of the golf course, which was negative.  Shortly after this, V/VENTIMIGLIA's wife, Kathleen VENTIMIGLIA, arrived at MPGC.  RAMSEY then requested M. VENTIMIGLIA coordinate dive rescue response to search the hole 3 pond.

BIOGRAPHICAL DATA
EMPLOYMENT:  NPSPD
SSN:
DOB:
POB:       Lowell, MA
RESIDENCE:
OTHER:     Badge R9963

**Reported By:**   Brian A. Van Cleef
**Office:**        NCISRU Monterey

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
CONTENTS HERETO MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

Exhibit ( 6 )

**STATEMENT** 

Place : Monterey, CA
Date  : 12/15/05

I, Thomas John HIRZEL, make the following free and voluntary statement to Brian A. Van Cleef whom I know to be a Representative of the United States Naval Criminal Investigative Service. I make this statement of my own free will and without any threats made to me or promises extended. I fully understand that this statement is given concerning my knowledge of the death of Joseph VENTIMIGLIA, CIV.

For the purpose of identification, I am PO1 in the U.S. Navy assigned to the Center for Information Dominance Detachment, Monterey, CA. My social security number is ████████ and I was born on ████████ in San Diego, CA. I reside at 311 Brittany Seaside, CA. On 27JAN06, I will be PSC'ing to NIOC, Medina, San Antonia, TX and living at 123 Bright trail, San Antonio, TX.

On 29NOV05, I along with my wife Kristen HIRZEL (DOB: ████████, POB: Toronto, Canada), drove to the Monterey Pines Golf Course (MPGC), Monterey, CA to play golf. We arrived at MPGC at approximately 1345. As we were driving past hole 3 towards the pro shop, my wife commented that a golf bag was sitting unattended near the pond adjacent to hole 3. I looked and saw a golf bag positioned upright by it's stand. We continued to the pro shop and paid for our golf game. My time stamp on my receipt was 1354. The person at the cash register commented to me that only 3 groups of golfers came out to golf that day. He further made mention of two golfers from the Cal State University Monterey Bay (CSUMB) golf team. I noticed these golfers when I drove up to the pro shop. At that time they were teeing off at hole 10.

The weather was overcast with a heavy mist and occasional light drizzle. The ground was very wet. My wife and I rented a golf cart. As we were playing through hole 3, my wife's ball landed near the unattended golf bag. The bag was positioned between the southwest corner of the pond and a large pine type tree. The bag was facing hole 3. I walked over to the bag and pulled it upright to look at it closer. I pulled the club cover off of the driver and saw it was an "Adam's Golf" brand driver. The only other person I noticed in the area was a person hitting balls at the driving range. This person didn't have a golf bag with him so I assumed it was a MPGC employee just hitting some balls. At this point, my wife mentioned that whosever bag this was may have fallen into the pond. I set the bag back on its legs and walked over to the pond. The black plastic lining along the bank of the pond was wet. I purposely did not set foot on the plastic since it looked very slippery. I looked around the bank, water's edge and surface of the pond. The water was calm and very murky. I did not see any drag marks or anything to indicate someone fell into the pond. My wife and I then continued to play golf. As we were playing closer to hole 3, I noticed two golf balls, a "Pinnacle" and another one which I don't recall the name. One was on the fairway and the other was in the rough. My thoughts were someone, perhaps whomever the golf bag belonged to, was playing multiple balls.

After we finished playing hole 3, my wife and I drove to the pro shop and reported the unattended golf bag to the man behind the register. He said he would send someone to get it. By the time we finished playing hole 9, the golf bag was gone.

NCIS 5580/26 (1/2001)                                    (Formerly NCISFORM 016/04-81)

Exhibit ( 7 )

USN00111



Continuation of voluntary sworn statement
Thomas John HIRZEL
on

My wife and I played all 18 holes of golf and then left MPGC. There was only one other golfer I recall seeing, an older gentleman who was approximately four to five holes ahead of us besides the CSUMB golfers.

Later that night, my wife and I were watching the 10:00PM local news on T.V. A report mentioned a drowning at MPGC and I realized it must have involved the unattended golf bag. I called the NPS Police Department minutes after having realized what we had come across.

This statement, consisting of this page and 1 other page(s) was typed for me by Brian A. Van Cleef as we discussed its contents. I have read and understand the above statement. I have been given the opportunity to make any changes or corrections I desire to make and have placed my initials over the changes or corrections. This statement is the truth to the best of my knowledge and belief.

Signature: _____

Sworn to and subscribed before me this \15 day of DECEMBER in the year 2005 at

NPS POLICE DEPT. _____

Witnessed: _____

_____
Representative, Naval Criminal Investigative Service
AUTH: DERIVED FROM ARTICLE 136,
UCMJ (10 U.S.C. 936) AND 5 U.S.C. 303

Page 2 of 2

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

TITLE:    V/VENTIMIGLIA, JOSEPH/CIV
CCN:    30NOV05-SWMY-0038-7HNA

INVESTIGATIVE ACTION:    RESULTS OF INTERVIEW OF ROBERT HORNADY

1. On 16DEC05, Reporting Agent (RA) interviewed Robert "Bear" HORNADY, regarding the alleged drowning death of V/VENTIMIGLIA aboard the Monterey Pines Golf Course (MPGC), Monterey, CA. For background information, HORNADY was the Pacific Grove Ocean Rescue (PGOR) diver that located V/VENTIMIGLIA's body in the MPGC pond adjacent to hole 3 on 30NOV05.

2. HORNADY said that he located V/VENTIMGLIA by bumping into his body with his right hand. At the time, HORNADY was swimming laterally along the bottom while holding onto a guide rope in his left hand. Guide ropes are strung across the pond to assist the rescue divers. HORNADY said he was approximately 6' from the guide rope's center weight and swimming towards the south shore when he located V/VENTIMIGLIA. HORNADY stated that V/VENTIMIGLIA was lying on the bottom of the pond on his back. V/VENTIMIGLIA's legs were slightly drawn up with a bend at the knees. V/VENTIMIGLIA's arms were drawn up around his chest and his fists were clenched. HORNADY estimates that V/VENTIMIGLIA was lying approximately 8' below the surface. HORNADY grabbed at V/VENTIMIGLIA's clothing and pulled him in. HORNADY swam to the edge while at the same time ascending to the surface. HORNADY held V/VENTIMIGLIA just below the surface while other PGOR members assisted in placing V/VENTIMIGLIA in a body bag.

3. HORNADY said the pond's water temperature was approximately 60 degrees and the visibility in the water was 8". HORNADY did not see any other items in the water except for golf balls. HORNADY said he has over 28 years of rescue dive experience.

BIOGRAPHICAL DATA
EMPLOYMENT:    Retired Physicist
SSN:
DOB:
POB:    Lincoln, NE
RESIDENCE:    809 Ocean View Blvd. Pacific Grove, CA
OTHER:

**Reported By:**    Brian A. Van Cleef
**Office:**    NCISRU Monterey

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

Exhibit ( 9 )

# U.S. NAVAL CRIM●N●●VESTIGATIVE SERVIC●●

TITLE:   V/VENTIMIGLIA, JOSEPH/CIV
CCN:    30NOV05-SWMY-0038-7HNA

**INVESTIGATIVE ACTION:   RESULTS OF INTERVIEW OF CRAIG VENTULETH, MPGC**

1. On 19DEC05, Reporting Agent (RA) interviewed Craig P. VENTULETH, regarding the alleged drowning death of V/VENTIMIGLIA aboard the Monterey Pines Golf Course (MPGC), Monterey, CA. V/VENTIMIGLIA's body was located in the pond adjacent to hole 3 on 30NOV05.

2. VENTULETH stated that on 29NOV05, he recalled V/VENTIMIGLIA checking into the pro shop to play golf around 1300. At the time, VENTULETH was conducting shift turnover with Ricki PANIS, MPGC Assistant Manager. VENTULETH recalled V/VENTIMIGLIA proceeding to the hole 1 tee box. VENTULETH stated he occasionally looked out on the golf course throughout his shift but did not see V/VENTIMIGLIA at anytime.

3. VENTULETH stated that around 1400, a couple came into the pro shop to report an unattended golf bag near the hole 3 pond. VENTULETH told the couple he would send someone to fetch the golf bag. At around 1445 Jan (NFI), an RV park employee, and Jacob BARRY, an MPGC employee, came into the pro shop. VENTULETH asked Jan to watch the pro shop while he and BARRY retrieved the unattended golf bag.

4. VENTULETH and BARRY located the golf bag near the southwest corner of the hole 3 pond. The bag was positioned upright by it's legs and tilted toward hole 3. VENTULETH scanned the surrounding area, including the water's edge, and did not see anything unusual. VENTULETH said he placed his foot on the plastic, which lined the bank of the pond. VENTULETH said the plastic lining was wet and very slippery. VENTULETH and BARRY then took the golf bag and stored it in the golf cart maintenance garage. VENTULETH said he quickly forgot about the unattended golf bag.

5. On 30NOV05, VENTULETH arrived at MPGC at approximately 0830. David STOCKLY, MPGC General Manager, told VENTULETH that a missing man's car was located in the MPGC parking lot. VENTULETH stated that he then made the connection between the missing man and the unattended golf bag. VENTULETH retrieved the golf bag and presented it to the missing man's wife, who was at MPGC. The wife said she did not know what type of golf clubs her husband used. The Naval Postgraduate School Police Department arrived at MPGC moments later and shut down the golf course.

6. Following the interview, VENTULETH accompanied RA to the hole 3 pond to identify the area where he located the unattended golf bag. The area was approximately 15' from the 5th hazard stake (tracking in a south direction parallel to the water's edge) and approximately 7' from the top of the pond's plastic lining.

7. Following RA's measurements, Thomas LAYCOCK, MPGC Assistant Superintendent, came upon RA and VENTULETH. RA and LAYCOCK identified the general area that V/VENTIMIGLIA's 3-iron club was located the previous week. LAYCOCK and VENTULETH both stated a 3-iron would not be used to hit a ball from the area the golf bag was located at. VENTULETH stated a 3-iron is used to hit a ball approximately 200 yards. VENTULETH estimated it was 80 yards from RA's present position to hole 3. LAYCOCK and VENTULETH stated a 3-iron is the longest club that has a flat angled head. A driver club is longer then a 3-iron but has a rounded head. Thus LAYCOCK and VENTULETH felt the discovery of the 3-iron in the pond indicated V/VENTIMIGLIA was trying to fetch a ball out of the pond. VENTULETH described himself as a serious golfer that is training to become golf pro.

BIOGRAPHICAL DATA
EMPLOYMENT:   MPGC
SSN:

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

Exhibit ( 10 )

# U.S. NAVAL CRIMIN●●VESTIGATIVE SERVIC●●

**TITLE:** V/VENTIMIGLIA, JOSEPH/CIV
**CCN:** 30NOV05-SWMY-0038-7HNA

**INVESTIGATIVE ACTION:  RESULTS OF INTERVIEW OF RAMON PANIS**

1. On 21DEC05, Reporting Agent (RA) interviewed Ramon PANIS, regarding the alleged drowning death of V/VENTIMIGLIA aboard the Monterey Pines Golf Course (MPGC), Monterey, CA. On 30NOV05, V/VENTIMIGLIA's body was located in the MPGC pond adjacent to hole 3. Investigative efforts identified PANIS as someone who has witnessed a golfer fall into the hole 3 pond.

2. PANIS stated that sometime around the summer of 2004, he was golfing at MPGC with 2 friends.  An Asian man that appeared to be in his late 60's or early 70's (NFI) decided to join PANIS's group and golf with them. PANIS said that after completing hole 3, his group had to wait for another group still in the hole 4 tee box. PANIS and his group were standing near the southeast end of the pond. At this point, the Asian man walked to the edge of the pond and appeared to be trying to recover a ball in the pond. PANIS looked away and moment's later, out of the corner of his eye, he noticed the Asian man slipping down the bank of the pond. The man was trying to climb out but his hands and feet could not find traction on the plastic that lined the bank of the pond. PANIS said the Asian man had a look of panic on his face. PANIS and his two friends immediately ran to help the Asian man who was submerged up to his waist. PANIS and his friends grabbed the man by the belt loop of his pants and pulled him out of the pond.

3. PANIS said the Asian man did not offer an explanation as to how he slipped into the pond. PANIS has never witnessed anyone else fall into the ponds at MPGC.

BIOGRAPHICAL DATA
EMPLOYMENT:   Maitenance worker, Carmel Plaza
SSN:
DOB:
POB:          Ft Ord, CA
RESIDENCE:    6 Mizpah Ct. Seaside, CA
OTHER:

**Reported By:**   Brian A. Van Cleef
**Office:**        NCISRU Monterey

**WARNING**
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE. CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

USN00119

Exhibit ( il )

Exhibit B

# *Monterey County Sheriff-Coroner*

## Office of the Coroner
### Coroner's Unit 1414 Natividad Rd. Salinas, California 93906

**Joseph Ventimiglia**                                     **Coroner Case Number: 20050948**

| CLASSIFICATION | Manner of Death | | Sub Manner of Death | | | | Deputy Coroner | | |
|---|---|---|---|---|---|---|---|---|---|
| | Accident | | Drowning | | | | Alfred Martinez | | |
| | Type of Medical Examination | | Time Departed | | Time Arrival | | Date of Death | | Time of Death |
| | Autopsy | | | | | | FND 11/29/2005 | | Unknown |

| DECEDENT PERSONAL DATA | Name-First | | Middle | | Last | | | Marital Status | |
|---|---|---|---|---|---|---|---|---|---|
| | Joseph | | | | Ventimiglia | | | Married | |

| | Age | | Date of Birth | Place of Birth | | Height | Weight | Hair | | Eyes |
|---|---|---|---|---|---|---|---|---|---|---|
| | 52 | | 10/02/1953 | CA | | 5' 09" | 184 | Brown | | Blue |
| | Sex | Teeth | | Race | | | | | | SSN |
| | M | | | White | | | | | | |
| | Scars, Marks, Tattoos | | | | | | | | | |

| RESIDENCE | Address | | | City | | | State | Zip |
|---|---|---|---|---|---|---|---|---|
| | 2090 Paralta Ave | | | Seaside | | | CA | 93955 |

| PLACE OF DEATH | Place | | | | County | |
|---|---|---|---|---|---|---|
| | Monterey Pines Golf Course | | | | Monterey | |
| | Address | | City | | | State |
| | 1250 Garden Road | | Monterey | | | CA |

| REPORTING INFORMATION | Death Reported By | Agency | | Date | Time | Removed From Scene To |
|---|---|---|---|---|---|---|
| | Brian A. Van Cleef | NCIS Monterey | | 11/30/2005 | 1130 | Coroner's Facility |
| | Address | | City | | State | Zip |
| | 1870 Morse Drive # 123 | | Monterey | | ca | 93943 |

| CAUSE OF DEATH | Immediate Cause: | Asphyxia |
|---|---|---|
| | Due to: | Drowning |
| | Due to: | |
| | Due to: | |

| OTHER SIGNIFICANT CONDITIONS | |
|---|---|
| | |

| INJURY INFORMATION | Place of Injury | | Injury at Work? | Date of Injury | Time | Estimated |
|---|---|---|---|---|---|---|
| | Pond | | No | 11/29/2005 | Unknown | |
| | Address of Injury    1250 Garden Rd. | | City | County | | State |
| | | | Monterey | Monterey | | CA |
| | Injury Description | | | | | |
| | Decedent drowned in golf course pond after falling in while playing a round of golf | | | | | |

| IDENTIFICATION | Identification Method | | Identified By | |
|---|---|---|---|---|
| | Visually | | Kathleen Ventimiglia | |

| NOTIFIED | Name | | Relationship | | Mailing Address | | |
|---|---|---|---|---|---|---|---|
| | Kathleen Ventimiglia | | Spouse | | 2090 Paralta Ave Seaside, CA 93955 | | |
| | Notified By | | | How Notified | | Date | Time |
| | Sgt. Joh DiCarlo | | | In Person | | 11/30/2005 | |

| ADDITIONAL INFORMATION | Pathologist | Other Investigation | | Funeral Home | |
|---|---|---|---|---|---|
| | John Hain | | | Mission Mortuary | |

Mike Kanalakis, Sheriff-Coroner

Alfred Martinez Deputy Coroner

Coroner Supervisor

Enclosure ( A )

USN00064

**CORONER'S REPORT**
Investigator: Alfred Martinez
Decedent: Joseph Ventimiglia

Case #    **20050948**

**Page 2**

## PERSONS CONTACTED:

Kathleen Ventimiglia
2090 Paralta Ave.
Seaside, Ca
394-7042

## AGENCIES:

United States Naval Criminal Investigative Service
Special Agent Brian A. Van Cleef
NCIS Monterey
1870 Morse Dr. #123

Monterey County Sheriff's Office
Sgt. Joe Moses
Sgt. John DiCarlo

Monterey, Ca 93934

## REFERENCES:

Central Valley Toxicology Inc.
Toxicology number: CVT-05- 12184
Police Report # Seaside police # 2005-1129011/1
        MCSO Rescue team 10516-05

## NARRATIVE:

On 11/30/2005, about 1130 hours, I was contacted by County Communications and asked
to respond to the Monterey Pines Golf Course in the City of Montererey in regards to a
body found in one of the water hazards at the golf course. I was advised that the Sheriff's
Dive team was on scene and had already removed the body from the water. I was also
advised that the golf course was under federal jurisdiction with Naval Criminal
Investigative Services.

Special agent Brian Van Cleef was heading up the Navy's investigation of the incident. I
was further advised that Sheriff's Sargeant John DiCarlo was also on scene with the
Sheriff's dive team.

I responded to the scene and once there spoke to Sgt. DiCarlo. I learned from speaking to
Sgt. DiCarlo, and later speaking with Special Agent Van Cleef, that the deceased was
identified by his wife as Joseph Ventimiglia age 52. He had been reported missing to the

USN00065



**CORONER'S REPORT**
Investigator: Alfred Martinez
Decedent: Joseph Ventimiglia

Case #    20050948

Page 3

Seaside Police Department on 11/29/2005 at 1914 hours.

Apparently Ventimiglia was last seen by his wife on the morning of 11/29/2005. They had agreed to contact each other about 1600 hours on that date. He never called and failed to show up at a basketball game in Salinas that evening. This was not common behavior. No marital problems existed between the two.

Ventimiglia's brother knowing that Joseph had been golfing on the 29th attempted to locate his brother's car at the golf course. He could not get into the golf course that evening. He again went out to the golf course on 11/30/2005, in the morning and found his brother's car in the golf course parking lot. He checked at the Pro shop and learned that his brother's clubs had been located between third hole and the 4th tee next to a water hazard. He knew that his brother was known to retrieve golf balls in the ponds at the course. He suspected his brother might have been trying to retrive balls and ended up falling into the pond. He checked the area where the clubs were located and saw what looked like slide marks into the pond on the heavy gauage plastic pond liner. It should also be noted that it had been raining on the previous day at times hard and the area around the pond would have been very slick.

The sheriff's dive team was contacted and asked to respond to search the pond. The pond was described to be lined with heavy guage plastic sheeting and be appoximatley 9 to 11 feet deep at the middle of the pond. I was also advised the sides of the pond were very steep and the divers had a hard time getting out of the pond due to this fact and also the fact that the water level was such that several feet of plastic were exposed on the pond edges and would make it very hard to get any kind of grip or traction especially in wet/slippery conditions such as would have existed on the day Ventimiglia was last seen golfing at the course.

All aspects of the investigation suggested an accidental drowning. An autopsy would now be conducted to make a final determinatin as to Cause and Manner of death.

I examinaed the body of the deceased, which was in a yellow body bag next to the Sheriff's rescue truck. I did a cursory head to foot examination of the decedent, and did not note any type of remarkable injury or trauma. The decedent was fully clothed. He wore black and white golf shoes, a hooded black long sleeve sweatshirt and sweatpants, balck athletic shorts , a blue short sleeve t-shirt and had a golf glove on his left hand. He woere a black plastic wristwatch and a yellow metal band on his left ring finger.

The body of the decedent was transported by the contract removal service to the Monterey County Coroner Morgue facility to await autopsy.

## POSTMORTEM EXAMINATION:

**CORONER'S REPORT**   Case #     20050948

Investigator: Alfred Martinez

Decedent: Joseph Ventimiglia

Page 4

An autopsy was ordered as per California Government Code Section 27491 and performed at the Monterey County Coroner Facility. Dr. John Hain, Coroner's Pathologist, conducted the procedure on 11/30/2005 at 1430 hours (refer to Dr. Hain's report for specific details).

## TOXICOLOGY:

Toxicology studies were conducted by the Central Valley Toxicology, Inc.
No common acidic, neutral or basic drugs were detected. No blood Ethyl Alcohol detected.

## CONCLUSION:

In view of the information listed above, as well as the information received from the pathologist, it is concluded that this was a death of Accidental cause and origin and no further investigation is warranted by the Coroner's Office.

_____
Alfred Martinez Deputy Coroner

1/4/2006
(Date)

_____
Coroner Supervisor

1.5.06
(Date)

  

# JOHN R. HAIN, M.D.
Forensic Pathologist
Board Certified
(831) 755-3792

## _MONTEREY COUNTY POSTMORTEM EXAMINATION_

DECEDENT'S NAME:  JOSEPH VENTIMIGLIA               CASE #20050948

DECEDENT'S AGE: 52 YEARS               RACE:  WHITE          SEX: MALE

DATE/TIME/SITE: 11/30/05, 1430 HRS          MONTEREY COUNTY CORONER FACILITY

INVESTIGATOR: ALFRED MARTINEZ               PATHOLOGIST:  JOHN HAIN, M.D.


**EXTERNAL EXAMINATION** (excluding recent injuries and medical treatment)

Identification of the body:  Established by coroner's investigator.

Age, gender, height, weight: Middle aged male, 69" and 184 pounds.

Clothing description: The body and clothing are soaking wet.  Clothing consists of black and white leather golf shoes, hood black long sleeve sweatshirt and sweatpants, black sport shorts with white trim, blue short sleeve tee shirt, white briefs, left tan golf glove and socks on both feet.

Personal effects on body: Black plastic wristwatch and band on the left wrist and yellow metal band on the left ring finger.

Postmortem changes: Full and symmetrical rigor mortis with diffuse fixed lividity which is prominent in the face and upper portions of the torso as well as the arms.  The rigor mortis in the arms has fixed the arms in a forward position in front of the chest, consistent with drowning.

Hair characteristics: Straight brown and gray head hair, 3-4" in greatest length.

Development: Within the normal range.

Body build: Average.

General skin features: Light tan skin color without rashes or edema.

Localized skin changes: No identifying scars or tattoos.

Head exam:  Facial features, including eyes, ears, nose, and lips are normally formed.

Eye features: Clear corneas, blue iris color, without exudates or discoloration.

Petechial hemorrhages: Absent.

Dentition: Apparently natural.

Enclosure ( B )

VENTIMIGLIA, JOSEPH  20050948

Contents of mouth and nose: Watery bloody purge and foam.

Neck and chest: No deformities or evidence of disease.

Abdomen: No deformities or evidence of disease.

External genitalia and anus: No deformities or evidence of disease.

Back: No deformities or evidence of disease.

Arms: No deformities or evidence of disease.

Legs: No deformities or evidence of disease.

Hands: No deformities or evidence of disease. Surfaces, and nails are unremarkable.

Feet: No deformities or evidence of disease. Surfaces, and nails are unremarkable.


### EVIDENCE OF ATTEMPTED RECENT MEDICAL/SURGICAL TREATMENT

None.


### EVIDENCE OF RECENT PHYSICAL INJURY

None.


### INTERNAL EXAMINATION (excluding recent injuries and treatment)

Ribcage: Slightly abnormally configured, with slight pectus excavatum, without tumors or other significant lesions. Ribs are nonbrittle.

Chest cavities: Linings smooth and glistening, without infection, scarring, or fluid accumulations.

Mediastinum: Anterior portion exhibits no infiltrates, masses, adenopathy, or thymic enlargement.

Pericardial sac: Linings smooth and glistening, without tumor, inflammation, or excessive fluid.

Abdominal cavity: Linings smooth and glistening, without significant adhesions or fluids.

Position of organs: Location and arrangement of all thoracic and abdominal viscera are normal.

Heart: 440 gm., smooth glistening surfaces, normal shape, and mild enlargement.

Vascular configuration: No major anomalies of great vessels or coronary blood vessels.

Coronary arteries: Relatively uniform diameters, without areas of significant obstruction.

Chambers: No significant dilatation. Linings are devoid of fibrosis or thrombosis.

Septae: No defects or malformations of walls between atria or ventricles.

Muscle: Uniform consistency without areas of focal discoloration, softening, or scarring.

2

VENTIMIGLIA, JOSEPH  20050948

Valves: Exhibit no deformities or scarring. Circumferences, in order of flow, measure within the normal range.

Walls: Left ventricular thicknesses are 1.7 cm. Right ventricular thicknesses are 0.4 cm.

Aorta: Exhibits no malformations, no areas of narrowing or dilatation, no disease of wall or lining.

Vena cava: Normally formed, without obstructing blood clots, tumors, or disease processes.

Lower trachea: Linings are smooth, without deformities, obstructions, exudates, or discoloration.

Lungs: right: 725 gm., left: 700 gm., bright pink and hyperexpanded with smooth glistening surfaces without tumors, nodules, or scarring.

Circulation: Arteries and veins exhibit no major anomalies, disease or obstructions.

Bronchi: Linings exhibit no areas of obstructions, tumor, purulence, but there is white frothy liquid fluid present.

Tissue: Hyperexpanded pink lungs with diffuse frothy edema, but no significant focal lesions or diffuse disease conditions.

Small intestine: Smooth, glistening, external surfaces, with normal diameters and internal linings.

Large intestine: Smooth, glistening, external surfaces, with normal diameters and internal linings.

Intestinal contents: Watery chyme & unremarkable stool without abnormalities of color or consistency or volume.

Esophagus: Wall and lining displays no deformities, obstruction, tumor, scars, infection or ulcers.

Stomach: Wall and lining displays no deformities, obstruction, tumor, scars, infection or ulcers.

Gastric contents: Approximately 200 cc of watery fluid containing some partially digested tan food particles.

Pancreas: Normal shape and consistency, without atrophy, necrosis, scarring, cysts, or tumor.

Spleen: 200 gm. Exhibits no deformity, tumors, scars, nodules, necrosis, discoloration, or fibrosis.

Liver: 1770 gm. Exhibits no deformity, tumors, scars, nodules, necrosis, discoloration, or fibrosis.

Biliary system: Major bile ducts are patent. Gallbladder shows no deformity, lesions or stones.

Adrenals: Cortex and medulla show no hemorrhage, atrophy, nodules, enlargement, or necrosis.

Kidneys: right: 175 gm., left: 200 gm. Exhibit no significant deformities, ureteral obstruction, or tumor.

Cortex: No scarring, focal lesions, atrophy, necrosis, or discoloration.

Medulla and pelvis: No scarring, focal lesions, hydronephrosis, or necrosis.

Urinary bladder: Walls and linings are free of deformities, inflammation, ulcerations, and tumors.

3

VENTIMIGLIA, JOSEPH      20050948

Bladder contents: Approximately 25 cc of clear yellow urine.

Internal genitalia: Not dissected.

Lymph nodes: Without enlargement, discoloration, necrosis, or tumor.

Vertebral column: Anterior thoracic and lumbar spine displays no apparent major deformities.

Skull: Normal overall shape, without cranial deformities, defects, tumors, or major old injuries.

Subdural membrane and space: No masses, scarring, discoloration, or fluid collections.

Leptomeninges: Glistening and translucent, without cysts, exudates, or areas of discoloration.

Cerebrum: Uniform consistency, without significant deformities, atrophy, swelling or herniation.

Brain tissue: 1390 gm., sectioning reveals no focal or diffuse gray or white matter disease.

Cerebellum: Uniform consistency, without tumor, deformities, necrosis, or herniation.

Brainstem: Pons and medulla exhibit no discoloration, deformities, softening, or tumor.

Intracranial vasculature: Major arteries and veins exhibit no malformations or obstruction.

Upper trachea: No deformities, obstructions, scarring, discoloration, or exudates.

Larynx: Cartilages normally formed, vocal cords without swelling, growths, or ulcers.

Epiglottis: Exhibits no deformities, tumor, inflammation, swelling, or ulceration.

Hypopharynx: Exhibits no deformities, tumor, inflammation, swelling, or ulceration.

Oropharynx: Without obstructions, palatal deformities, uvular swelling, or discoloration.

Tongue: Surfaces and muscle exhibit no tumor, inflammation, swelling, ulcers, or discolorations.

Cervical spine: No apparent major deformities of vertebral column are observed anteriorly.

Extensions or limitations of internal examination: None.

| | |
|---|---|
| TOXICOLOGY SPECIMENS: | Femoral vein blood, urine, vitreous humor, liver tissue, bile and gastric contents. |
| HISTOLOGY SPECIMENS: | Representative organ sections are taken for microscopic examination. |
| EVIDENCE COLLECTED: | Head hair samples and blood spots for storage. |
| RADIOGRAPHIC EXAM: | None. |
| TOXICOLOGY RESULTS: | Negative for intoxication. See toxicology report. |
| MICROSCOPIC EXAM: | Ten H&E stained slides of all major organ systems are examined and are found to exhibit no significant pathology. |

4

VENTIMIGLIA, JOSEPH     20050948

**CAUSE OF DEATH:**    Asphyxia (minutes) due to drowning (minutes).

**MANNER OF DEATH:**    Accident

SUMMARY & COMMENTS

Based on the postmortem findings and information provided by the Coroner's investigation, it is my opinion the decedent died as a result of asphyxia due to accidental drowning in a golf course pond.  No evidence of intoxication or significant underlying natural disease was present.

JOHN R. HAIN, M.D.
FORENSIC PATHOLOGIST

JRH: DJ                DATE: 12/14/05

5

USN00072

DEC-07-2005  12:20        CVT

 CENTRAL VALLEY
TOXICOLOGY, INC.



**Case Name:**                           **TOXICOLOGY NUMBER:** CVT-05-12184

   Ventimiglia,                      Joseph

**Specimen Description:** 30 ml femoral blood, 3 ml vitreous humor & 28 ml urine each labeled "Ventimiglia, Joseph; MCSO; 2005 948; Mont; 11/30/05; 1430; ADF"

| **Delivered by** | **Date** | **Received by** | **Date** |
|---|---|---|---|
| CDS | 02-Dec-05 | Bill Posey | 02-Dec-05 |
| | | 2005-948 | |

**Request:** Complete Drug Screen

**Requesting Agency**
Monterey Co. Sheriff/Coroner
Attn: Fiscal Dept.
1414 Natividad Road
Salinas CA 93906

**Report To**
Monterey Co. Sheriff/Coroner
Attn: Investigator Martinez
1414 Natividad Road
Salinas CA 93906

## RESULTS

Specimen: Femoral Blood Sample

Complete Drug Screen: No common acidic, neutral or basic drugs detected.
                          No blood Ethyl Alcohol detected.

B. L. Posey            December 05, 2005

**Analyst**

B.L. POSEY
S.N. KIMBLE
Directors

1580 Tollhouse Road
Clovis, California 93611
Phone (559) 323-9940
Fax (559) 323-7502

TOTAL P.01

SEASIDE POLICE        Fax:831-899-6297        Dec 29 2005  15:21      P.02



**Activity Number:**
**SPD INC 2005-1129011**

**Seaside Police Department**

Kathleen VENTIMIGLIA reported her husband, Joseph VENTIMIGLIA as a missing person.  She last saw him at about 0830 hours in their residence.  He was supposed to call her at about 1600 hours because they had arrangements to meet.  They were going to attend a basketball game in Salinas. He never called and he didn't show up to the game.

She said they have no marital problems, no monetary problems and he has no health problems. Kathleen said he would not stay out late without calling her.  None of his clothing is missing.  He did attend the Meadow Brook Tennis Club.  He was last seen leaving at about 1400 or 1430 hours.

His destination is unknown.  He should be driving a silver 2001 Toyota Rav4.

A BOL was placed and he was entered into MUPS as missing.  Case pending his return.

12/29/2005 2:21 PM
Printed By: crosa

Page 2
Report #: STDOR002
Reporting Officer: Fernandez, Manuel

USN00082

NARRATIVE:

11/30/05, 0848 hours, County Comm●●●ns informed me that Mike Ventim●●●ed to request the Sheriff's Dive Team search for his brother, Joe Ventimiglia, who was possibly under water in a pond at the Monterey Pines Golf Course, Monterey. Joe had been missing since yesterday and a missing person report was filed with the Seaside Police Department last night. Joe's car was still in the parking lot of the golf course and his golf clubs were found next to the pond.

I paged out the Sheriff's Dive Team and I then responded to the golf course. The course is on Navy property and Naval Investigative Services personnel were on scene to investigate. I met with Navy investigators Brian Van Cleef and Eric Glazier, as well as the Naval watch commander Ekali Brooks. I talked to Mike Ventimiglia, brother of the missing person. Mike said that his brother often golfed at the course and had been golfing there yesterday. He never returned home. A missing person report was then made with the Seaside Police Department. Mike said that he could not enter the golf course to check on his brother's car last night because the gate was locked. Today, he returned to the course and found the car and was told that the golf clubs were found next to the pond. Knowing that his brother was known to retrieve golf balls in the ponds at the course, Mike suspected that his brother could have tried to retrieve a golf ball from this particular pond and possibly fell in. There were also scrape marks along the side of the pond, near the area of the golf clubs.

The pond is man made and is used as a "water hazard" for the golf course. This pond is situated between the 3rd hole and the 4th tee. The pond is lined with black plastic sheeting from the sides and along the bottom in order to maintain the water level. The golf clubs were already removed from where they were found. The clubs were originally found next to a tree. I noticed some markings on the plastic sheeting alongside the pond, near the tree. These markings appeared to be some sliding marks, as if someone slid down the side of the pond. The water was murky. According to the golf course superintendent, Dan Tracy, the depth of the pond is about nine to eleven feet in the middle.

The Sheriff's Dive Team, consisting of Sgt. Joe Moses and Deputy Dave Burnside, along with rescue team member Fernando White, as well as the Pacific Grove Ocean Rescue Team, responded to the scene and coordinated an underwater search. At 1100 hours, the dive team found the body of Joe Ventimiglia in the middle of the pond straight out from the location that the possible slide marks were seen.

The body was placed into a body bag while still in the water and was brought out. I examined the body and determined that the body was in full rigor mortis. The body was fully clothed. I checked the left front pants pocket and located a wallet, which contained a California driver's license in the name of Joe Ventimiglia. I placed the wallet back into the pocket. I then informed Joe Ventimiglia's wife, Kathleen Ventimiglia, who was also present, that I had confirmed the identity of the body.

I notified the Coroner's Office to respond to the scene.

Navy Chaplain, Rev. Fr. Ron L. D. Kawczynski, was on scene and requested to conduct a prayer at the request of the family. Chaplain Kawczynski was allowed to view the body and perform the prayer readings.

At approximately 1220 hours, Coroner's Detective Alfred Martinez arrived on scene to conduct his investigation and took custody of the body.

I contacted the Seaside Police Department and informed them that Joe Ventimiglia was found deceased and to remove the name from the missing persons system.

No further action by this office.

Case continues with the Naval Investigative Services and the Coroner's Office.

Case Closed.