# EXHIBIT "A"

[Plaintiffs' Initial Complaint]

BRADLEY M. CORSIGLIA, ESQ.  SBN 117004
CORSIGLIA MCMAHON & ALLARD LLP
96 NORTH THIRD STREET, SUITE 620
SAN JOSE, CALIFORNIA 95112
TELEPHONE: (408) 289-1417
FAX: (408) 289-8127

ATTORNEYS FOR PLAINTIFFS,
KATHLEEN VENTIMIGLIA, individually, and as the Guardian
Ad Litem for STEPHEN VENTIMILIA and KELLIE VENTIMILIA

ADR

E-FILING

FILED
07 OCT 26 PM 2:45
RICHARD W. WIEKING
U.S. DISTRICT COURT
NO. DIST. OF CAL.

Fee Paid
S.I
③

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATHLEEN VENTIMIGLIA, individually, and as the Guardian Ad Litem for STEPHEN VENTIMILIA and KELLIE VENTIMILIA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, CHAMBLIN-LANDES CONSTRUCTION, INC., a California corporation, and DOES 1-50, inclusive,<br><br>Defendants. | No. C07 05481 RS<br><br>COMPLAINT FOR DAMAGES<br><br>(1)  Wrongful Death<br><br>JURY TRIAL DEMANDED |

Plaintiffs KATHLEEN VENTIMIGLIA, individually, and as the Personal Administrator of the ESTATE OF JOSEPH VENTIMIGLIA, deceased, and as the Guardian Ad Litem for STEPHEN VENTIMILIA and KELLIE VENTIMILIA, alleges:

**GENERAL JURISDICTION AND BACKGROUND ALLEGATIONS**

1. Plaintiff KATHLEEN VENTIMIGLIA, is the spouse of Joseph Ventimiglia (hereinafter the "decedent") and, at the time of decedent's death, a resident of Monterey County, California.

2. Plaintiff KATHLEEN VENTIMIGLIA, is further entitled to bring an action for the wrongful death of decedent pursuant to Code of Civil Procedure §377.60, based upon the fact that she was legally married to decedent at all times hereafter mentioned, including at the time of decedent's untimely death.

3. Contemporaneously with the filing of this complaint, plaintiff KATHLEEN VENTIMIGLIA is filing a Petition and Order for Appointment of Guardian Ad Litem for STEPHEN VENTIMILIA (DOB: March 8, 1993) and KELLIE VENTIMILIA. As such, plaintiff KATHLEEN VENTIMIGLIA, as the Guardian Ad Litem for STEPHEN VENTIMILIA and KELLIE VENTIMILIA, is entitled to bring an action for the wrongful death of pursuant to Code of Civil Procedure §377.60, based upon the fact that STEPHEN VENTIMILIA and KELLIE VENTIMILIA were decedent's only surviving natural children.

4. This action arises under the Federal Tort Claims Act, Sections 2671 through 2680 of Title 28 of the United States Code. This Court is vested with Jurisdiction pursuant to Section 1346(b) of Title 28 of the United States Code.

5. Upon information and belief, plaintiffs allege that at all times relevant, defendants DOES 1 to 50 were the agents, servants and employees of the other defendants and were acting at all times within the scope of his/her agency and employment, and with the knowledge and consent of his/her employer. Defendants, and each of them, at all times herein mentioned acted jointly and in concert and conspired and agreed to do the things hereinafter specified; and each and all of the things hereinafter alleged to have been done by defendants or any of them, were done as co-conspirators and thus, as agents of each other, as well as their respective individual capacities, to advance their own individual interests.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 50, inclusive are unknown to plaintiffs at this time, and plaintiffs therefore sue said defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege

their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a DOE is responsible in some manner or is otherwise legally liable to plaintiffs for the injuries complained of herein.

7. At all times relevant hereto, the UNITED STATES OF AMERICA through the United States Department of the Navy, had jurisdiction, management, and control of the Monterey Pines Golf Course ("MPGC") in Monterey, California.

8. At all times relevant hereto, the United States Department of the Navy's agents and employees were acting within the scope of their agency/employment with the UNITED STATES OF AMERICA.

9. Defendant CHAMBLIN-LANDES CONSTRUCTION, INC., is a California corporation with its principle place of business located in Paso Robles, California. At all times relevant hereto, Defendant CHAMBLIN-LANDES CONSTRUCTION, INC., was doing business in the County of Monterey, State of California.

10. On or about November 29, 2005, decedent Joseph Ventimiglia drowned while golfing at MPGC, located at 1250 Garden Road, Monterey, CA. On said date. Decedent was playing golf at the defendant Navy's golf course, and was in the process of playing his round of golf when he accidently slipped and fell into a pond located at or about the third hole of the golf course.

11. On or about November 15, 2006, plaintiffs timely filed a Claim for Damage, Injury, or Death with the UNITED STATES OF AMERICA, by and through the Department of the Navy. On or about May 17, 2007, the Department of the Navy issued their notice of final administrative action rejecting plaintiffs' claims.

### FIRST CAUSE OF ACTION
### [Wrongful Death]

12. Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 11 of this complaint as though fully set forth herein.

13. On or about November 29, 2005, decedent went to play golf at MPGC, located at 1250 Garden Road, Monterey, California.

14. Decedent was a retired Department of Defense civilian who, as part of his retirement compensation, was provided a pass to play golf at the U.S. Navy's MPGC.

15. Plaintiffs are informed and believe, and on that basis allege, that adjacent to the third hole of MPGC is a large pond, which serves as a known obstacle for those using the MPGC golf course. This pond presents an unreasonably dangerous condition since it is unusually deep, was lined up to and over the top edges with slippery black plastic, had steep sides, and was not designed with any terraced edges, lifelines or safety rails.

16. Plaintiffs are informed and believe, and on that basis allege, that the aforementioned pond was subject to re-design, repairs, modifications, and construction by defendant CHAMBLIN-LANDES CONSTRUCTION, INC., in or about 2003.

17. The MPGC golf course, including its third hole pond, were/are owned, designed, constructed, managed, maintained controlled, operated, under the jurisdiction of the UNITED STATES OF AMERICA through the United States Department of the Navy.

18. Plaintiffs are informed and believe, and on that basis alleged, that on November 29, 2005, decedent was playing golf at MPGC. At some point during the course of play, decedent fell into the third hole pond and drowned.

19. Plaintiffs are informed and believe, and on that basis alleged, that decedent would never have fallen into said pond if defendants, and each of them, had taken reasonable, appropriate and necessary precautions to prevent golfers from accidentally falling into the pond by, among other things, placing a guard rail and/or fencing around said pond.

20. In addition to failing to taken reasonable, appropriate and necessary precautions to prevent golfers from accidentally falling into the third hole pond, defendants, and

each of them, created and allowed an unreasonably dangerous condition to exist at the MPGC golf course by designing, constructing, maintaining and managing the third hole pond in such a condition so as to preclude those who had accidentally fallen into said pond (due to the lack of any guard rail or fencing adjacent thereto) from the ability to extricate themselves from the pond itself due to defendants' decision to, among other things, improperly create and allow: 1) an unusually deep water level in the pond, 2) unusually high sides surrounding the pond, 3) an unusually steep slope on all sides surrounding the pond, 4) the placement of unusually slippery black plastic sheeting on the sides surrounding the pond, and 5) the accumulation of moss and other obstacles on the plastic siding on each slope hindering those trying to escape from the pond.

21. In addition to, and despite of, the foregoing, defendants, and each of them, made no effort to alleviate or minimize this unreasonably dangerous condition by, among other things, placing terraced stepping areas around the third hole pond, or by placing rope or a similar devices around the pond to assist golfers who had fallen into the same.

22. A U.S. Naval Criminal Investigation Services report dated January 5, 2006, states in part that: "During search linear drag marks were visible extending down the bank of the pond and below that water's surface near the southwest corner of the pond. On 9 December, 2005, following the partial draining of the Hole Three pond, a second death scene examination was conducted. Draining allowed for a 'Power Built' brand three iron golf club to be located near the bottom of the pond. MPGC subsequently identified the club as the same brand used by [decedent]."

23. A diver for the Pacific Grove Ocean Rescue Team located decedent's body in the pond at a depth of approximately 8 feet near the southwestern shore. Decedent was lying on his back with his legs drawn up and bent at the knees. His arms were drawn up to his chest and his fists were in a clenched position.

24. An investigation report entitled "Results Of Death Scene Examination" noted that the pond was lined with black plastic-like material on November 30, 2005 (the date of the examination) and that the water level of the pond allowed for approximately four feet of plastic to extend up the pond's bank. The report states that: "A search of the southwest bank of the pond identified linear-type drag marks extending down the plastic liner. The drag marks were visible continuing below the water's surface." There is no description of any types of ropes or buoys extending across the pond. It is further described that on December 9, 2005, following partial draining of the pond, a second death scene examination was carried out. At that time, the estimated depth of the pond was "10-12 feet". The approximate slope of the southwest bank of the pond was 45 degrees. The approximate slope of the north side of the pond was 60 degrees. Numerous balls were visible near the bottom of the pond. Also discovered in the southwest corner of the pond was a baseball hat and golf club, both later described by plaintiff as belonging to decedent.

25. Plaintiffs are informed and to believe, and on that basis allege, that decedent's November 29, 2005, fall into the third hole pond at the MPGC was not unprecedented. According to subsequent investigative reports, a person was interviewed on December 21, 2005, who had witnessed another golfer fall into the Hole Three Pond at MPGC. This person apparently stated that in 2004, he witnessed a man fall into the Hole Three Pond and then try to climb out, but was unable to get traction with his hands or feet due to the pond's plastic lining. According to the investigation report, the man was able to get out of the pond only after his friends pulled him out. In addition the Naval investigation report following decedent's death includes a statement from an MPGC employee to the effect that her uncle told her that he witnessed a golfer slip into the pond near Hole Three several weeks prior to November 29, 2005. Fortunately there was another golfer present who was able to pull that stranded golfer out of the pond. Decedent was not so fortunate.

26. As a directive foreseeable consequence of the foregoing, decedent fell into the third hole pond on or about November 29, 2005, and drowned shortly thereafter.

27. Decedent's body was found at the bottom of the third hole pond the following day, on or about November 30, 2005.

28. As a direct and proximate result of the unsafe, negligent, careless, incompetent, hazardous, and otherwise wrongful conduct and inaction of the UNITED STATES OF AMERICA, CHAMBLIN-LANDES CONSTRUCTION, INC., and DOES 1 through 50, decedent died on or about November 29, 2005.

29. As a further direct and legal result of the negligence of the UNITED STATES OF AMERICA, CHAMBLIN-LANDES CONSTRUCTION, INC., and DOES 1 through 50, plaintiffs have been deprived of the decedent's society, comfort, attention, love, affection, services, and support to their damage, the exact amount of which can not be ascertained at this time. When plaintiffs have ascertained this amount, they will seek leave of the court, orally or in writing, to amend this complaint to insert this amount.

30. As a further direct and legal result of the negligence of defendants and each of them, including DOES 1 through 50, decedent has incurred, and will continue to incur lost wages and/or benefits. Plaintiffs do not know at this time the exact amount of the lost wages and/or benefits that have been incurred and that will be incurred in the future. When plaintiffs have ascertained this amount, plaintiffs will seek leave of the court, orally or in writing, to amend this complaint to insert this amount.

31. As a further proximate result of the negligence of defendants, and each of them, as herein alleged, and the death of the decedent, plaintiffs have incurred funeral and burial expenses the exact amount of which can not be ascertained at this time and plaintiffs pray leave to amend this paragraph and to insert this amount once it can be ascertained.

WHEREFORE, plaintiffs pray for damages as set forth below.

## PRAYER

WHEREFORE, plaintiffs pray judgment against defendants and each of them as follows:

1. For all general damages according to proof;
2. For special damages according to proof;
3. For medical and related expenses according to proof;
4. For wage and benefit loss, past and future according to proof;
5. For funeral and burial costs according to proof;
6. For prejudgment interest at the legal rate according to proof;
7. For fees and costs of suit herein incurred;
8. For such other and further relief as the court may deem proper.

Dated: October 17, 2007

CORSIGLIA, McMAHON & ALLARD, LLP

By: _____
BRADLEY M. CORSIGLIA, ESQ.
Attorneys for Plaintiffs
KATHLEEN VENTIMIGLIA, individually,
and as the Guardian Ad Litem for
STEPHEN VENTIMILIA and
KELLIE VENTIMILIA